**23-7156    23-7163**

# UNITED STATES COURT OF APPEALS
# DISTRICT OF COLUMBIA CIRCUIT

### District Court Docket No. 20-cv-2988

---

### COLLECTOR'S COFFEE INC.,
### MYKALAI KONTILAI

**Appellants-Plaintiffs, Cross-Appellee Plaintiffs**

v.

## DEBEVOISE & PLIMPTON LLC, ANDREW CERESNEY, DUSTIN BROCKNER, MIHEER MHATRE

**Appellee-Defendants, Cross-Appellants Defendants**

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

---

## OPENING BRIEF
## OF APPELLANTS-CROSS APPELLEES, PLAINTIFFS
## COLLECTOR'S COFFEE INC. AND MYKALAI KONTILAI

---

GEORGE LAMBERT, Esq.,
CADC bar #60958, DC bar #979327
THE LAMBERT LAW FIRM PROFESSIONAL CORP.
1025 Connecticut Ave, # 1000 NW
Washington, D.C., 20036
Tel. (202) 640 1897, Fax (800) 852 1950
Email: LawDC10@gmail.com

# TABLE OF CONTENTS

INTRODUCTION………………………………………………………...1

I.     JURISDICTIONAL STATEMENT……………………………………2

II.    ISSUES ON APPEAL…………………………………………………3

III. STATEMENT OF THE CASE, GENERAL………………………………12

IV. STATEMENT OF FACTS RELEVANT TO PRESENT APPEAL……...12

      **1.    DEBEVOISE UNEXPECTEDLY CLAIMED 'STATELESS CITIZEN PARTNER' OBJECTION TO OBTAIN DISMISSAL OF ACTION IN DISTRICT COURT**…………………………………..12

      **2.    ALLEGED VIOLATION OF TAX LAWS, IF CONFIRMED, CALLS FOR FINDING THE PARTNERSHIP AGREEMENT CONTRARY TO PUBLIC POLICY AND INEFFECTIVE**……………………………………………………13

      **3.    DEBEVOISE FAILED TO ESTABLISH THE VALIDITY OF THE PARTNERSHIP AGREEMENT AS TO OUT-OF-STATE PARTNERS UNDER NEW YORK STATE TAX REQUIREMENTS, INCLUDING MANDATORY LISTING PARTNERS OVERSEAS**…..14

      **4.    DEBEVOISE FAILED TO REBUT THE INFERENCE OF VIOLATING THE INTERNAL REVENUE SERVICE'S REQUIREMENTS FOR PARTNERSHIPS TO LIST FOREIGN PARTNERS**……………………………………………………….19

      **5.    CCI'S ARGUMENT THAT DEBEVOISE'S ORGANIZATION IN LONDON RESEMBLES ANOTHER SHELL GAME FOR "TAX PLANNING" INCOMPATIBLE WITH A VALID PARTNERSHIP**……………………………………………………….20

      **6.    DEBEVOISE COULD NOT RECONCILE THE RECORD IN LONDON THAT THERE ARE NO BENEFICIAL OWNERS IN DEBEVOISE PLIMPTON LLP-LONDON**……………………….22

       7.     NO PERCENTAGE OF THE OWNERSHIP STAKE FOR FOUR ATTORNEYS IN LONDON MEANS THOSE ARE NOT TRUE PARTNERS, NOT COMPORTING WITH THE STATUTORY REQUIREMENTS……………………………………………………….23

       8.     LONG-ARM JURISDICTION IN CONNECTION WITH ALLEGED MISCONDUCT ALSO SUPPORTED JURISDICTIONAL DISCOVERY……………………………………………………………...24

       9.     DENIGRATING FORMER CLIENTS CCI AND ITS CEO WAS IMPROPER AND HAD NOTHING TO DO WITH THE JURISDICTION OF THE U.S. DISTRICT COURT OVER DEBEVOISE………………………………………………………………25

**V. SUMMARY OF ARGUMENT**……………………………………………………26

**VI. ARGUMENT**……………………………………………………………………...29

       1.     FOUR STATELESS CITIZEN ATTORNEYS IN LONDON HAVE NOT BEEN TRUE PARTNERS HOLDING THE REQUIRED STAKE OF OWNERSHIP……………………………………………………….29

       2.     CASE LAW INTERPRETING NEW YORK STATE STATUTES ON PARTNERSHIP…………………………………………..32

       3.     ALLEGED MALPRACTICE IN DEBEVOISE'S HANDLNG THE GRAND JURY SUBPOENA FROM DISTRICT OF COLUMBIA, AS PINNACLE OF ALLEGED ACTIONABLE MISCONDUCT……………………………………………………...39

       4.     LONG ARM JURISDICTION IN FORUM OF ISSUED SUBPOENA FOR THREE INDIVIDUAL DEFENDANTS APPLIES IN THIS CASE……………………………………………………...…44

       5.     ACTION IN DISTRICT COURT WAS PERMEATED BY THE APPLICATION AND INTERPRETATION OF FEDERAL STATUTES AND REGULATIONS……………………………...…45

**6. CCI ASKS THE COURT TO CONSIDER PERSUASIVE RATIONALE AND ANALYSIS IN CASE *SIANTOU V. DK ASSOCIATES***………………………………………………,,47

**7. DEBEVOISE'S SERVICES WERE SUBJECT TO PART 203 (RULES RELATING TO INVESTIGATIONS), GOVERNED BY CODE OF FEDERAL REGULATIONS AND SEC'S RULES**…………50

**8. CONDUCT OF DEBEVOISE WAS SUBJECT REGULATION UNDER CFR PART 205, STANDARDS OF PROFESSIONAL CONDUCT FOR ATTORNEYS PRACTICING BEFORE THE SEC**……………………………………………………51

**CONCLUSION**…………………………………………………………..52

# LIST OF AUTHORITIES

*Adams v. Franklin,*                                                                             42
    DC Ct App., 2007, 924 A.2d 993

*Boyarsky v. Froccaro,*                                                                         35
    125 Misc.2d 352, 479 N.Y.S.2d 606

*Brandenburger & Marx v. Heimberg*                                                      34
    34 N.Y.S.2d 935

*Bryan v. BellSouth Commc'ns, Inc.,*                                                      45
    377 F.3d 424, 429 (4th Cir. 2004)

*Christianson v. Colt Indus. Operating Corp.,*                                          50
    486 U.S. 800, 821 (1988)

*Contemporary Mission, Inc. v. Bonded Mailings*, Inc.,                          15
    671 F.2d 81 (2d Cir.1982)

*Courtney v. Riordan,*                                                                          15
    192 Misc. 53, 79 N.Y.S.2d 658 (1948)

*Delta Sigma Theta Sorority, Inc. v. Bivins,*                                            45
    215 F.Supp.3d 12

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg*.             27
    545 U.S. 308

*Gunn v. Minton,*                                                                               48
    568 U.S. 251 (2013)

*Hanlon v. Melfi,*                                                                               36
    102 Misc.2d 170, 423 N.Y.S.2d 132

*Herbin v. Hoeffel,*                                                                            44
    DC Ct of App., 2002, 806 A.2d 186.

*In re Coleman,*                                                                                42
    DC Ct of App., 2017 162 A.3d 159

*In re Gonzalez,*                                                                               44
    773 A.2d 1026 (D.C.2001)

*In re Koeck,*                                                                                   43
    DC Ct App, 2018, 178 A.3d 463 2018 WL 770373

*In re Paul, DC Ct of Appl*,                                                                 42
    292 A.3d 77

*In re Public Defender Serv*.,                                                             42
    831 A.2d 890, 900 (D.C.2003)

*Institute of Physical Medicine & Rehabilitation, LLP. v. Country Wide Ins*.   34
    193 Misc.2d 803, 752 N.Y.S.2d 232

*Joachim v. Flanzig*,   34
    3 Misc.3d 371, 773 N.Y.S.2d 267   35
*Jones v. U.S.*   42
    DC Ct of App, 828 A.2d 169
*Kaiser Steel Corp. v. Mullins,*   14
    455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982)
*Keen v. Jason*,   33
    19 Misc.2d 538, 187 N.Y.S.2d 825, affirmed 11 A.D.2d 1039, 207
    N.Y.S.2d 1001
*Manning v. Whalen*,   35
    259 A.D. 490, 20 N.Y.S.2d 364
*Merrell Dow Pharms. Inc. v. Thompson*,   45
    478 U.S. 804 (1986)
*Merrill Lynch, Pierce, Fenner & Smith v. Manning*   37
    136 S.Ct. 1562
*Mudge Rose Guthrie Alexander & Ferdon v. Pickett*,   34
    11 F.Supp.2d 449
*Old Dominion Elec. Coop. v. PJM Interconnection, LLC,*   48
    24 F.4th 271, 279 (4th Cir. 2022), cert. denied, 143 S. Ct. 87 (2022)   49
*Parisi v. Sinclair*,   45
    DCD, 2012, 806 F.Supp.2d 93
*Pattison v. Blanchard*,   35
    1851, 5 N.Y. 186
*Police Association of New Orleans v. City of New Orleans*   50
    (E.D. Louisiana 2021) 572 F.Supp.3d 265
*Rutkin v. Reinfeld*,   15
    229 F.2d 248 (2d Cir.), cert. denied, *29 352 U.S. 844, 77 S.Ct. 50,
    1 L.Ed.2d 60 (1956)
*SEC v. Gulf & Western Industries, Inc*.,   43
    518 F.Supp. 675, 683 (D.D.C.1981)
*Siantou v. DK Associates*   47
    D. Maryland, S. Div. Feb. 16, 2023, Slip Copy 2023 WL 2071266   48
*Silvera v. Safra*   15
    361 N.Y.S.2d 250, 79 Misc.2d 919 (Sup.Ct.N.Y.Cty.1974)
*U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*,   14
    C.A.2, 1989, 879 F.2d 20   15
*United Calendar Mfg. Corp. v. Huang*,   15
    463 N.Y.S.2d 497, 94 A.D.2d 176 (2d Dep't 1983)
*Upjohn Co. v. United States*,   42
    449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)

*Waldman v. Levine,*                                                   41
    544 A.2d 683, 690–91 (D.C.1988)

*Wallace v. Perret,*                                                   15
    *Supreme Ct, Kings Cty, New York. June 23, 2010, 28 Misc.3d 1023*
    *903 N.Y.S.2d 888 2010 N.Y. Slip Op. 20249*

*Walters v. Fullwood,*                                                 15
    675 F.Supp. 155 (S.D.N.Y.1987)

*Wender v. United Servs. Auto. Ass'n,*                                 47
    434 A.2d 1372, 1373 (D.C.1981)

*Woodsworth v. Dennett,*                                               15
    43 N.Y. 273 (1871)

# INTRODUCTION.

Appellants-Plaintiffs Collector's Coffee Inc. ("Collector's Coffee") and its Chief Executive Officer Mykalai Kontilai ("Kontilai"), citizens of the State of Nevada for purposes of jurisdiction, or collectively "CCI" or "Appellants-Plaintiffs" respectfully submit their Opening Brief appealing from the U.S. District Court's rulings granting the Motion to Dismiss ("MTD") the case below brought by Appellees-Defendants Debevoise & Plimpton LLP ("Debevoise"), its partner Andrew Ceresney ("Ceresney"), and its former associates Dustin Brockner ("Brockner") and Miheer Mhatre ("Mhatre"). See Verified Complaint (VC), JA1-52.[1]

After the case was in the District Court for nearly three years, it ruled from the bench at a short conference, ruling it did not have jurisdiction, followed by an Order without a Memorandum of Opinion. JA1346-1356.

Debevoise has approximately 45 attorneys in that firm's District of Columbia office (801 Pennsylvania Ave NW, Washington, DC 20004, since 2004). JA3.

Debevoise executed through its counsel a waiver service of process in the District of Columbia. JA53.

CCI submits a Joint Appendix consisting of the record in the open Docket and several documents in a separate volume filed under seal. A related case in the

---

[1] Joint Appendix ("JA"), consisting of 3 Volumes.

District of Columbia, action *In Re Grand Jury* case 1:19-gj-00034-BAH, in this Court was presided by The Hon. Beryl Howell. The action in the Court below concerns several cases in other District Courts and the U.S. Securities and Exchange Commission proceedings, as cited in the record.

## I. JURISDICTIONAL STATEMENT.

This Court of Appeals has jurisdiction to review the District Court's Orders on the lack of jurisdiction of a U.S. District Court on the grounds of the parties' lack of diversity of citizenship. While contested by the Plaintiffs-Appellants, who submit that there is complete diversity in this case, such rulings from the bench, followed by Orders, are reviewable by the U.S. Court of Appeals. JA1346-1356.

## II. ISSUES ON APPEAL

A. The District Court, as CCI respectfully submits, made an error in acknowledging that the four attorneys in London, affiliated with Debevoise Plimpton LLP in New York, based on the evidentiary record, are merely **nominal partners**, not satisfying the statutory requirements of being valid partners holding ownership stake, as a matter of State law.

B. The District Court did not address the issue brought by CCI that a nominal partner **without a declared stake of ownership** in a partnership is not a true or valid partner holding a stake of ownership, mandatory under the

statutory requirements under the laws of the State of New York but a **nominal partner**.

C.    As CCI argues, the District Court erred in denying CCI's Motion for Jurisdictional Discovery filed by CCI in good faith and founded on the government records from London and elsewhere.

D.    The District Court declined to make an analysis proposed by CCI that claims stated in the VC "arise under" the laws of the United States and satisfy the jurisdictional requirements for the action to be heard in the U.S. District Court.

E.    The District Court's rulings from the bench, not requiring Debevoise to disclose the existence of a percentage stake of the purported out-of-State partners, is in stark conflict with the State case law.    In a demonstrative case, *Wallace v. Perret*, Supreme Court, Kings County, New York. June 23, 2010, 28 Misc.3d 1023, 903 N.Y.S.2d 888, 2010 N.Y. Slip Op. 20249, the State Court showed that the percentage of ownership is critical for voting by partners for partnership decisions.    In that case, the State Court considered the concrete percentages up to 10,000-th <u>part of one percent</u> in ownership stake.

F.    Regrettably, in this case, the Court ruled essentially that the ownership percentage does not matter, ruling.    CCI submits that despite the

tax forms and the case law in New York, the Court below erred, stating from the bench to justify dismissing the case: "THE COURT: I don't know of any authority that says that an individual has to identify what percentage of interest they have in a partnership in order to qualify as a partner." JA1359.

The District Court did not issue a Memorandum of Opinion, and two hearing transcripts concerning a dismissal are demonstratively short for a case of that magnitude and do not cover numerous issues that CCI raised in its submissions.

By way of more detailed fact-related issues, based on the record and evidence, the District Court should have acknowledged or drawn strong inferences or conclusions:

1. With regard to 4 attorneys in London, Debevoise presumptively did not file the State of New York's forms or pay taxes, requiring the partnership to pay taxes on behalf of its Out-of-State partners, e.g.**,** forms **IT-204** and **IT-2658,** as well as the **IRS Forms 1065** and **8805**, all of which were **mandatory** in 2020 (and now).

2. The heavily redacted purported "Partnership Agreement" Debevoise (over ca. 90% of text redacted) presumptively allowed the firm not to pay taxes for out-of-state partners, required from a true partnership registered in New York, while not designating a percentage, meaning **nominal** partners without an ownership stake. If so, such an Agreement was

illegal, void, and **ineffective**, contrary to the State of New York and the United States public policy, represented by the U.S. Internal Revenue Service.

3.     Specifically, no percentage stake is entered on the lines <u>after the names of the four attorneys in London</u>.  The unredacted part with their names with the continued lines shows an empty continuation of the line, allowing to make a strong inference or representing indirect evidence the attorneys in London have no percentage stake of ownership and are consequently only **nominal** partners.

4.     Nothing prevented Debevoise from producing the partnership's redacted tax forms for 2020 under seal, with any redactions, disclosing only the critical information on several lines: that the four purported partners in London's LLP would have been allocated a percentage of ownership, and listed in the tax documents filed by Debevoise.

5.     A U.S. District Court had a special obligation that no parties before it, even sophisticated large law firms, evaded its jurisdiction by allegedly violating, as it follows from the available record, the applicable State Law and the U.S. federal laws, e.g., Title 26, Internal Revenue Code, concerning the dues from out-of-State partners.

6.     To the extent that portions of the redacted 'Partnership Agreement' operate to eliminate a nominal partner's tax liability, such an

Agreement should be held ineffective as contrary to the public policy, determining that the four attorneys practicing in London are not true partners, but **nominal** partners under the laws of the State of New York.

7.     Despite ample possibilities in this action, Debevoise's consistent failure to identify any stake, e.g., the percentage of ownership of the purported partners in London, and other omissions concerning the alleged 'stateless citizen partners' defense, the District Court should have granted CCI relief of jurisdictional discovery under the test of "good faith" when CCI made assertions in good faith.

8.     The Partnership Agreement contains empty lines against the four attorneys in London, where one would expect a percentage of the stake of each.   The District Court did not address CCI's proposal that disclosing Debevoise's tax submissions establishing the partner status of four attorneys in London could be under seal, redacted, or only for "attorney's eyes."   That would leave for review only the printed numbers about their ownership percentage of the stake and listing them in tax returns as Debevoise's out-of-state partners, as required in New York.

## III.  STATEMENT OF THE CASE, GENERAL

The case was filed in the District Court below on October 15, 2020.   The representation by Debevoise of CCI and Kontilai started with the retainer on January

10, 2018, until Debevoise withdrew from representing those in November 2018. The action stated the negligence claims (malpractice) against Debevoise, its one partner, and two associates (who had since left the firm). More specifically, the VC contained the following Counts: (1) Negligence (Malpractice, Conflict of Interest); (2) Negligence (Malpractice, Conflict of Interest); (3) Negligence (Malpractice, Committing to Positive Outcome in Representation); (4) Negligence (Malpractice, Failure to Review Documents); (5) Breach of Contract; (6) Breach of Fiduciary Duties; (7) Fraudulent Concealment; (8) Fraud; (9) Misrepresentation; (10) Court-Ordered Inspection; (11) Accounting; (12) Unjust Enrichment; (13) Civil Conspiracy; (14) Injunctive Relief. JA1-52.

In the course of representing CCI and its Chief Executive Officer, Debevoise invoiced and collected millions of dollars in legal fees from an insurance carrier under the Director and Officer Policy. The exact amount of legal fees that Debevoise obtained is still unknown and should be discoverable.

To quote the summary from the VC, "This is an action based on the claims of malpractice and related causes of action. It is brought by a Nevada corporation, Collector's Coffee Inc., and its Chief Executive Officer, Kontiai, is acting in his capacity as a corporate officer and in his individual capacity as a majority shareholder of that Corporation (about 70% stake). This action is brought against a law firm, Debevoise & Plimpton LLP, its partner Andrew Ceresney, current

associate Dustin Brockner, and a former associate, Miheer Mhatre. Having been retained under the Engagement Agreement of January 10, 2018, Defendants abysmally failed in their duties to represent Plaintiffs in a U.S. Securities and Exchange Commission investigation, undertook acts of concealment, fraud, and allegedly violations of law, causing damages of a catastrophic nature to their former clients, effectively destroying the Corporation and its principal's life. See Exh. 1. Plaintiffs seek a judgment of forfeiture of all fees obtained by Defendants, and separately, both compensatory and punitive damages, injunctive and other relief for malpractice." JA1 *et seq.*

In a spectacular example of prima facie malpractice, Ceresney did not attend the grand jury proceedings in the District of Columbia.

This Court, The Hon. Howell, penned this statement concerning Ceresney: "The Witness has not appeared to testify before the grand jury pursuant to the January 2019 Subpoena." JSA1497.

Then Ceresney did not show up at the hearing on the government's Motion to Compel either, as the Court cited in the records filed under seal in Volume 3 of the Joint Appendix.

The Hon. Howell wrote a further troubling statement concerning Ceresney's non-appearance: "The Witness's counsel's request to be excused from the May 2, 2019 hearing, for personal reasons, was granted. See Min. Order (Apr. 16, 2019).

Although an attorney was present to observe the hearing on behalf of the Witness, this observer did not attend the hearing "to participate." H'rg Tr. (Rough)". SJA15. It follows that Ceresney wished to have an observer but not an attorney of record at the hearing. In other words, Ceresney did not argue before the Court to represent the interests of his former client, Kontilai.

The evidence of malpractice is overwhelming. For example, the transcripts of the depositions of Gale Holt and her former attorney, William Leone, show the overwhelming evidence of the misconduct by Debevoise. JA191-570, JA577-747. That started with the threshold issue, in which Ceresney and Debevoise should not have overcome the conflict of interest between Kontilai and Holt and should not have represented them at the same time as they did. Likewise, the transcripts of the depositions of Ty Sagalow, a former client of Debevoise, and Andrew Ceresney himself corroborate, in a fractional manner, that Kontilai was innocent. Instead, the transcripts indicate that Ceresney and Sagalow, in sum, acknowledged that Kontilai was innocent. JA748-1001. Holt, who was responsible for the misdeeds, such as "recreating documents" to produce to the SEC, instead shifted blame on Kontilai, who had nothing to do with Holt's conduct. Moreover, Holt admitted to her law violations at a meeting with the attorneys representing CCI and Kontilai, including at the December 20, 2018, meeting. JA571-576. However, instead of supporting his client, Kontilai, Ceresney, and Debevoise turned against Kontilai to evade his

responsibility and covertly ensure that Kontilai got charged.  Given the limited jurisdictional scope of the present appeal, CCI will only mention that without going into the quotations from the transcripts.

## THE JURISDICTIONAL ISSUE OF STATELESS CITIZEN PARTNER WAS BROUGHT UP 2 YEARS AND 10 MONTHS AFTER CASE FILED

Debevoise raised in the District Court below the jurisdictional issues and objections only about **2 years and 10 months** after they were aware of the case, bringing up, for the first time, a "stateless citizen partner" jurisdictional objection nearly three years later, on July 11, 2023.  This alleged "stateless citizen partner" jurisdictional attack had remained undisclosed to the District Court, which was a surprising turn of events in that lengthy litigation.  Debevoise's disclosure and such allegations concerning "stateless citizen partners" were unavailable in the public domain and came out as a surprise to the Court and CCI.

As CCI argued in the District Court, even if the applicability of the "stateless citizen partner" defense was valid (and CCI shows below that that is not so), Debevoise did not act in good faith, concealing that information for that long time until July 11, 2023.  CCI concealed such information from the Court and from CCI Plaintiffs, not providing any such tip to CCI before.

Debevoise's intentional nondisclosure automatically meant wasting the judicial resources and CCI's resources in the judicial forums for that long period.  In the time following the filing of this case and until the time Debevoise came with the

attack on the jurisdiction on July 11, 2023, Debevoise had made radical and suspect restructuring of documents in London, further complicating the judicial process and the case at hand.  JA1094-1202.

As CCI argued, the record establishes that the four of its attorneys in London were **nominal**, not true partners with a stake of ownership, as required in the State of New York. Debevoise's records show only that they were **nominal** partners in the New York partnership, with an empty space on the list where their percentage of ownership stake would be logically entered. Therefore, the "stateless citizen partners" defense did not apply in the case below.

CCI argues that the District Court abused its discretion or made an error while denying CCI's Motion for jurisdictional discovery, made in good faith.  CCI proffered, based on the records from the U.K., in a good faith belief that the four attorneys in London were not partners under the laws of the State of New York, did not have a stake of ownership in the partnership, which is mandatory.  Therefore the District Court has jurisdiction. When CCI's Motion for jurisdictional discovery was brought by CCI, several quintessential question marks relevant to the purported partnership's legal status were raised.  The documents from London raised red flags. Debevoise's argument on no jurisdiction of the U.S. District Court, without directly referencing compliance with the New York State requirements, looked like a forest of red flags.

CCI was under the opinion that a relatively short transcript of the conference before the Order to dismiss, missed critical information. JA1346-1356. CCI filed a Motion to alter or amend the Order under Rule 59(e), submitting the crucial pieces of information, including in a Reply. JA1398-1419, JA1441-1450. Unfortunately, the District Court did not alter or amend its Order and did not address the records from London that contradict the representations of Debevoise, in another short conference, making rulings from the bench. JA1452-1464.

**IV. STATEMENT OF FACTS RELEVANT TO PRESENT APPEAL.**

**1. DEBEVOISE UNEXPECTEDLY CLAIMED 'STATELESS CITIZEN PARTNER' OBJECTION TO OBTAIN DISMISSAL OF ACTION IN DISTRICT COURT.**

In response to a MTD filed by Debevoise, CCI filed its Motion for Limited Jurisdictional Discovery as indispensable for opposing that MTD.[2] While seeking to dismiss the action, Debevoise suddenly raised jurisdictional issues **two years and 10 months** after knowing of the case, bringing up, without any prior notices, a "stateless citizen partner" challenge to the jurisdiction of the U.S. District Court.

_____

[2] The case, asserting 14 Counts of relief, was filed on October 15, 2020. The Complaint depicted a highly troublesome chain of events, how Debevoise represented CCI and its officers, overcoming or ignoring conflict of interest on numerous occasions. As a result of such malpractice, as CCI complained, Debevoise destroyed its then clients, CCI and its CEO Kontilai, who became charged with the offenses, for which Debevoise's attorneys were responsible, including negligence in dealing with documents submitted to the SEC. JA1-54.

The record shows that within that timeframe, Debevoise undertook a radical restructuring of registration documents in London, the entity being initially registered as a "Private Limited Company." Until Debevoise attacked the jurisdiction, the "stateless citizen partners" allegation had been undisclosed, and such information was unavailable in the public domain.

In support of their attack on jurisdiction, Debevoise submitted 4 Affidavits from its attorneys in London and one Affidavit from the New York attorney. Debevoise also submitted, with an exceedingly heavy redaction, the documents generated within their law firm. That response was not corroborated by their tax filings, which require from the LLP to list partners outside of the U.S. Other than heavily redacted internal documents, that information, all of a sudden, submitted by Debevoise, was not corroborated or confirmed by official records, notably the percentage stake of such partners overseas.[3]

However, none of the documents discovered in London shows that four attorneys in London, the "**nominal**" partners, had any ownership stake in the Limited Liability Partnership registered in the State of New York.

---

[3] Debevoise discarded the attorney-client privilege, producing without their objections 565 privileged documents at this U.S. Courthouse, 3rd Floor Grand Jury #18-3 (Case 33) 333 Constitution Ave, N.W. Washington, D.C. 20001. Thereby, Debevoise shifted liability of CCI's employee Gail Holt given their own negligent or intentional conduct on Mykalai Kontilai.

The limited portions of the purported 'Partnership Agreement,' left after exceedingly heave redaction, also did not show the portions concerning who is responsible for paying taxes and filing the tax returns. That test would be critical for finding a lack of partners' status for four attorneys in London. That is fatal for the attorneys calling themselves "partners" but without, as it appears, an ownership stake in percentage and without the tax statutes' compliances by the partnership that should have listed the four Affiants claiming to be "stateless citizen partners."

As proffered before the District Court by movant CCI, the disclosure of the tax responsibilities in that 'Partnership Agreement' could be sufficient to determine that none of the four purported partners in London is a real partner in a partnership registered in the State of New York. Instead, the records show all four were without a percentage stake and thus **nominal** partners.

## 2. ALLEGED VIOLATION OF TAX LAWS, IF CONFIRMED, CALLS FOR FINDING THE PARTNERSHIP AGREEMENT CONTRARY TO PUBLIC POLICY AND INEFFECTIVE.

It is well settled that the "[I]llegal agreements, as well as agreements contrary to public policy, have long been held to be unenforceable and void." See *U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*, C.A.2, 1989, 879 F.2d 20. In the *Bonanno* opinion, the Second Circuit concluded that:

> "Under both federal and state law, illegal agreements, as well as agreements contrary to public policy, have long been held to be unenforceable and void, see *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72,

102 S.Ct. 851, 70 L.Ed.2d 833 (1982); *Walters v. Fullwood*, 675 F.Supp. 155 (S.D.N.Y.1987); *United Calendar Mfg. Corp. v. Huang*, 463 N.Y.S.2d 497, 94 A.D.2d 176 (2d Dep't 1983); *Silvera v. Safra*, 361 N.Y.S.2d 250, 79 Misc.2d 919 (Sup.Ct.N.Y.Cty.1974), and even where a contract is not itself unlawful, the bargain may still be illegal under New York law if it is closely connected with an unlawful act. *Contemporary Mission, Inc. v. Bonded Mailings*, Inc., 671 F.2d 81 (2d Cir.1982). The same principle demands that rights in or arising out of illegal partnerships not be recognized:

> An alleged partnership founded upon an illegal basis or one contrary to public policy cannot be used to establish any rights of the parties involved as parties. Moreover, if the purpose or subject matter of a partnership contract is illegal or against public policy, the contract may be held to be void.

15 N.Y.Jur.2d Business Relationships § 1296, at 581–82 (1981); see *Woodsworth v. Dennett*, 43 N.Y. 273 (1871); *Courtney v. Riordan*, 192 Misc. 53, 79 N.Y.S.2d 658 (1948). A particularly apt example, for our purposes, is *Rutkin v. Reinfeld*, 229 F.2d 248 (2d Cir.), cert. denied, *29 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956)."

The U.S. District Court had every ground to find that since, presumptively, Debevoise's purported 'Partnership Agreement' was crafted in a way to avoid paying taxes in the U.S. for purported Out-of-State partners and filing the tax returns required from the partnerships by the law, including under the Internal Revenue Code, then such partnership agreements are invalid and/or illegal and/or against the public policy.

Consequently, such a partnership agreement, presumptively allowing Debevoise not to file tax returns in the U.S. listing, and for, the attorneys residing in

London, should be held to be void, at least for purposes of defeating the jurisdiction of this Court under the diversity of citizenship provision.

**3.    DEBEVOISE FAILED TO ESTABLISH THE VALIDITY OF THE PARTNERSHIP AGREEMENT AS TO OUT-OF-STATE PARTNERS UNDER NEW YORK STATE TAX REQUIREMENTS, INCLUDING MANDATORY LISTING PARTNERS OVERSEAS.**

New York State has stringent requirements for partnerships with nonresident partners. The four exhibits, submitted by CCI, the official documents of the New York State Department of Taxation and Finance, demonstrated that if Debevoise's four partners were real partners, not <u>nominal</u> partners as CCI argues, then several tax forms would have necessarily been mandatory in the State.

- **CCI Exhibit 1**, New York State, Department of Taxation and Finance, Instructions for **Form IT-2658 Report of Estimated Tax for Nonresident, Individual Partners and Shareholders**.

- **CCI Exhibit 2**, **New York, Instructions for Form IT-204**, Partnership return, and related forms.

- **CCI Exhibit 3**, **New York Partner's Schedule K-1**, Tax Law, Article 22.

- **CCI Exhibit 4**, New York, Partner's Instructions, **Form IT-204-IP**, New York Partner's Schedule K-1.

Debevoise failed to rebut the Plaintiffs' statement that the New York partnership, the law firm Debevoise, would have been obligated to file tax returns in

the State of New York **on behalf of nonresident partners** and/or list those by their names.  Debevoise would have been required to list in its tax forms in New York State those nonresident partners with their addresses overseas, quoting from Form 2658-NYS, cited in the Motion for Jurisdictional Discovery.  **Form IT-2658-NYS**, required to disclose:

Column A – **Name and address of partner/shareholder**

**Foreign addresses** – Enter the information in the following order:

City, province, or state, and then country (all in the city, village, or post office box).

Debevoise should have been ordered to file under seal the redacted filing for 2020, which is relevant for an action initiated in 2020, providing exactly those entries, namely the names of those four partners/shareholders, with their addresses. Debevoise had no excuse to either provide that form under seal or admit that such a tax return was not filed in 2020 (or perhaps ever).

Across the board, in the action below, Debevoise failed to identify the percentage held by each or any of those purported partners in London, which would be illegal in the U.K.  Namely, their filing in the Company House showed: "no beneficial ownership," meaning zero interest.  Furthermore, Debevoise was obligated to comply with the requirement:

Column C – **Partner's/shareholder's percentage of ownership**

> **Enter each nonresident individual partner's or shareholder's ownership percentage in the partnership**…
>
> Column D – Amount of estimated personal income tax paid **on behalf of partner or shareholder**".

Again, in its Memorandum, Debevoise needed to submit evidence or clearly state that their New York LLP filed tax returns and paid to the State of New York the taxes statutorily required <u>on behalf</u> of each or any of the four nonresident partners.

The cornerstone of that argument is that not only individual attorneys claiming to be partners were obligated to file and pay taxes in the State of New York. In addition, Debevoise itself, the law firm organized as a New York LLP and located in the City of New York, NY State, had to file those tax returns and pay taxes **ON BEHALF** OF THE OUT-OF-STATE PARTNERS.

Instead, a logical interpretation of the four Affidavits filed by each of the alleged nonresident partners in London is that they, personally, <u>not Debevoise</u>, paid taxes in the U.S. for its four attorneys in London. The presumption arises that, highly likely, Debevoise did not pay taxes on behalf of those four allegedly nonresident partners, thus making a purported partnership illegal or contrary to public policy as to, at least, those four attorneys practicing in London.

Throughout the action, Debevoise consistently failed to indicate a <u>percentage of the alleged ownership</u> in the New York partnership held by every of the four stateless citizen partners. Debevoise has expansively used the option to file submissions under seal. Debevoise could have done that again, but only if those tax returns for the partnership existed, at least listing the four attorneys in London. Therefore, jurisdictional discovery is proper or required under these circumstances.

### 4. DEBEVOISE FAILED TO REBUT THE INFERENCE OF VIOLATING THE INTERNAL REVENUE SERVICE'S REQUIREMENTS FOR PARTNERSHIPS TO LIST FOREIGN PARTNERS.

As shown in the available record, Debevoise failed to rebut the presumption that Debevoise did not file tax returns listing their four attorneys in London or paid the mandatory taxes on their behalf. Thereby, the disclosure of the names of the partner(s) overseas and the financial information concerning their percentage stake is **mandatory**, to wit:

- **Exhibit 5**, **IRS Form 1065**, U.S. Return of Partnership Income.

- **Exhibit 6**, **IRS Form 8805**, Foreign Partner's Information Statement of Section 1446 Withholding Tax.

**IRS Form 1065** states in Schedule B, **Question 14: "Does the partnership have any foreign partners?"**

If any of the four alleged partners in London were true partners, not **nominal** partners, each would have been listed and disclosed in those filed with the IRS, not only on the New York State forms.

The District Court's denial of jurisdictional discovery was unwarranted.

## 5. CCI'S ARGUMENT THAT DEBEVOISE'S ORGANIZATION IN LONDON RESEMBLES ANOTHER SHELL GAME FOR "TAX PLANNING" INCOMPATIBLE WITH A VALID PARTNERSHIP.

As CCI argued in the District Court, Debevoise's representations concerning their organization in London vastly resemble the pattern of 'tax planning' or a shell game. For example, according to the records, a company consisting of attorneys did not engage in the practice of law, which is highly suspicious or prohibited in the U.S.

Debevoise, in its submissions, tried to convince the court that Debevoise-London's restructuring, precisely in January 2023, was "coincidental." The structure hiding behind those half-statements without proper disclosure resembles a 'tax protection' scheme, where attorneys call themselves partners but do not let the purported partnership comply with the tax laws of the State of New York or the Internal Revenue Code.

Indeed, the registered foreign LLP, appearing in January 2023, indicates the office address in New York, meaning there was no mistake. Ref. Exhibits 7-8 to the Opposition to the MTD submission by the Plaintiffs. No British Act was submitted in Exhibits to show what Debevoise purported to comply with. The only

documented fact was that its "partnership" in London has no beneficial owners, meaning its four attorneys in London are not partners.

Another insult to a reader's intelligence was the argument that Debevoise, organized as an English Private Limited Company, has not been involved in law practice. The same attorneys and solicitors were listed as members but did not practice law.

After the reorganization in January 2023 and registration of the partnership in London, with the office address in New York, the documents filed in London say that none of those attorneys or solicitors has a beneficial ownership stake in the partnership in New York State.

Debevoise's "explanation" that the chronology of the registration in London was incidental raised red flags again. The Opposition failed to explain why, when this case was filed on October 17, 2020, Debevoise was organized in England and Wales as a private non-trading company. As to listing those in the New York purported "Partnership Agreement," nothing is said about the percentage held by any of the four purported partners.

One of the four purported "partners," Mr. Scoville's holding one share of Debevoise-London, the only registered entity under that name in England and Wales, is inconsistent with other representations or makes those extremely strange, as another "tax planning" scheme yet defeating the existence of the partnership as a

matter of law in New York.  While alleging that some other partnership existed in London in 2020, the fact that it was not registered makes the allegations, based on some internal documents, not made official, suspect.

### 6. DEBEVOISE COULD NOT RECONCILE THE RECORD IN LONDON THAT THERE ARE NO BENEFICIAL OWNERS IN DEBEVOISE PLIMPTON LLP-LONDON.

Debevoise used the term "equity" in Debevoise & Plimpton LLP.  However, such equity must be translated into the ownership percentage, which Debevoise avoid because, as it looks like now, there is no percentage, and the partnership is fictitious.  Again, the London organization conclusively stated that the London affiliate **had no beneficial owners**, which must have included the ownership rights in the New York partnership.

The firm's internal, albeit secretive, lists cannot reconcile their listing with the official filings in the Companies House in England and the lack thereof.  It appears the explanations by Debevoise are highly confusing but consistent with "tax planning" where no disclosure of equity interest was made: **"Beneficial owners… who do not register could be fined up to &2,500 per day, be put in prison for up to 5 years"**.  For the purpose of Debevoise's attack on the diversity of citizenship jurisdiction of this Court, the Court should hold Debevoise to their own, stating zero beneficial ownership percentage, sufficient to rule that there was no partnership.

The internal "lists" of the partners, no matter what the attorneys call themselves, are meaningless without a percentage stake.

CCI proffered in the case that the tax records 2020 will confirm Debevoise's four attorneys in London are not partners under the laws of the State of New York. Regrettably, the District Court essentially did not address that proffer.

### 7. NO PERCENTAGE OF THE OWNERSHIP STAKE FOR FOUR ATTORNEYS IN LONDON MEANS THOSE ARE NOT TRUE PARTNERS, NOT COMPORTING WITH THE STATUTORY REQUIREMENTS.

Debevoise's attorneys may call themselves partners and likewise in their internal firm's documents as often as they wish, as that term of word is used in colloquial language all the time. That is not a legal fact, satisfying the statutory requirements for being a partner in New York State.

The missing percentage stake of each does not make them legally partners under New York's Chapter 278, namely Section 10, "Partnership defined." See also Section 11. 'Rules for determining the existence of a partnership,' "2. Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership…3. **The sharing of gross returns does not of itself establish a partnership,** whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." Source: N.Y. Partnership Law §11.

See also the next section, N.Y. Partnership Law §12.

All five Affidavits filed by Debevoise's purported partners do not satisfy the quintessential features of true partnerships, the record showing that the four attorneys in London are **nominal** partners without a percentage stake of the ownership in New York.

Again, sharing profits and losses pursuant to the Affidavits of four attorneys in London were not enough to establish the existence of a partnership and to establish their status as **partners** under the laws of the State of New York.

### 8. LONG-ARM JURISDICTION IN CONNECTION WITH ALLEGED MISCONDUCT ALSO SUPPORTED JURISDICTIONAL DISCOVERY.

The location or job migration of the three attorneys of Debevoise after 2020 is immaterial as long as their actions corresponded to subsection (3), "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." Those three attorneys handled the representation of the Plaintiffs and were responsible for that representation. The termination of representation did not terminate their responsibility for their actions or inactions thereafter, should they have participated in the disclosure of the attorney-client privileged documents. Debevoise's causing injury in the District of Columbia is evident, such as mishandling the defense of the former clients CCI and Kontilai.

All three attorneys, Ceresney, Brockner, and Mhatre, the participants in the confidential correspondence conducted with Kontilai and other officers of CCI.

The limited jurisdictional discovery was warranted or required to allow determining the exact role of each of the three in <u>mishandling the 565 privileged documents</u> in the District of Columbia.

### 9. DENIGRATING FORMER CLIENTS CCI AND ITS CEO WAS IMPROPER AND HAD NOTHING TO DO WITH THE JURISDICTION OF THE U.S. DISTRICT COURT OVER DEBEVOISE.

Having essentially destroyed CCI by way of alleged malpractice, Debevoise casually denigrated CCI in a series of filings in the District Court. As attorneys and the law firm, Debevoise have disregarded the fundamental principle that everybody is presumed innocent unless convicted in a Court of law. That fully applies to the second party, Kontilai, who has not been convicted of any felony and is presumed innocent until adjudged otherwise. As to the first Plaintiff, CCI, Inc., there have been no charges against that corporation, which Kontilai continuously heads as its CEO, president and a supermajority shareholder. Among other things, Debevoise's argument that Kontilai has been evading judicial proceedings was incorrect.[4]

Debevoise has not been unable to substantively oppose CCI's arguments for allowing jurisdictional discovery sought in CCI's Motion, requesting 90 days for

---

[4] For example, see a letter to the Court in the action *SEC v. CCI et al*., 19cv4355 in the U.S. District Court for the Southern District of New York, on October 26, 2023, where Kontilai essentially insisted on providing testimony in the trial schedule in December 2023, remotely given the detention overseas. See also Kontilai's Affidavit filed in the sister District Court on October 20, 2023.

such discovery.  Where Debevoise saw it insufficiently clear, CCI sought documentary discovery, presumably under seal.  That relief is relatively simple.  The anticipated redacted documents would yield the listing of the names of the four purported partners in London, allowing an easy legal conclusion and finding of no partnership and/or partners' status.  Production of documents under seal or for "attorney's eyes" only, within the requested 90 days for such limited discovery would have not been burdensome.

## V.  SUMMARY OF ARGUMENT.

1.      As evidence shows, the MTD's key argument that four attorneys in Debevoise's London office are U.S. citizens being "stateless partners" is incorrect or improper, because they have no ownership stake in the firm and are not true partners.  Instead, the record with empty space for the percentage shows they are **nominal** partners.

2.      N.Y. Partnership Law, at §10 *et seq.,* controls, namely that those four attorneys, presumably not being "co-owners" of the partnership and having no percentage stake in it, do not destroy the diversity jurisdiction of a U.S. District Court.

3.      The jurisdiction of this District Court is also proper under the statutory provision: "arising under the ... laws ... of the United States," 28 U.S.C. §1331".

4.     The claims in the District Court were permeated by the application or interpretation of the duties of conduct under over 30 Federal Statutes, including the securities statutes under Title 15 US Code, Title 18 US Code, and the Regulations of the U.S. Securities and Exchange Commission.

5.     The jurisdiction of the District Court was proper under the line of cases following the Supreme Court's analysis in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg*. (2005) 545 U.S. 308, creating an exception for cases where the federal law question is substantial, and in *Merrill Lynch, Pierce, Fenner & Smith v. Manning* (2016), 136 S.Ct. 1562, explaining that such an exception extends to cases concerning securities law.

6.     Debevoise's raising the "stateless citizen partner" argument after 2 years and 10 months in the Court should be held extraordinarily prejudicial to Plaintiffs and to the administration of justice and should be deemed invalid.

7.     The District of Columbia is not a State but a special federal jurisdiction. For most of its history, D.C. was governed by federal statutes. Although the District of Columbia now has its own Code, it is subject to Congressional oversight.

8.     This action concerns representing CCI and Kontilai in the investigation by the U.S. Securities and Exchange Commission, a federal agency with a seat in Washington, D.C.

9. The jurisdiction and venue were proper where Debevoise produced without objection privileged documents per subpoena directing production and appearance at U.S. Courthouse, 3rd Floor, Grand Jury #18-3 (Case 33) 333 Constitution Ave, N.W. Washington, D.C. 20001.

10. This Court has general jurisdiction over Debevoise & Plimpton, employing in Washington D.C. about 45 attorneys and regularly engaging in doing business in this District, their office being registered in this District as a foreign limited liability partnership, with the original registration in New York State.

11. The District Court sitting in the District of Columbia has "long arm jurisdiction" (DC Code § 13-423. Personal jurisdiction based upon conduct') over individual Defendants Ceresney, Brockner, and Mhatre.[5]

---

[5] For purposes of this brief, CCI only mentions that Debevoise raised other arguments for a dismissal, including under an arbitration clause. However, Kontilai never executed any arbitration clause in personal capacity and may not be bound by it, furthermore, Ceresney failed to suggest to CCI to seek an opinion of another, non-interested attorney, and never explained that that would limit the client's rights for redress. Debevoise's argument about the arbitration clause, if this Court were to consider it, claims based on malpractice may not be adjudicated by a one-person arbitrator, who may not necessarily be a lawyer, but are committed to the Court's procedure. No arbiter has power of injunctive relief, pleaded in VC.

# VI. ARGUMENT.

### 1. FOUR STATELESS CITIZEN ATTORNEYS IN LONDON HAVE NOT BEEN TRUE PARTNERS HOLDING THE REQUIRED STAKE OF OWNERSHIP.

Debevoise put an enormous weight on their argument that diversity jurisdiction is allegedly defeated by four stateless citizen partners. Each of four Affidavits of such attorneys state: "I am a partner at Debevoise & Plimpton LLP ("Debevoise")"…"I have been practicing law in Debevoise's London office".

However, as evidence shows, they are actually ***not valid partners*** under New York Partnership Law §10, because they are not co-owners of the partnership with a stake percentage. CCI's Exhibit 1 showed the official public record of Debevoise in the Company House for England and Wales, Debevoise & Plimpton LLC, company No. OE012515. The official record states: "**Beneficial owners: 0 active beneficial owners**."

The attorneys at Debevoise may call themselves orally or on their website as "partners", "litigation partners", "senior partners", "corporate partners". That does not change the presumed fact arising from the records that **none of the purported "partners" in Debevoise's London office is a beneficial owner of the partnership in New York State**.

As a New York limited liability partnership, Debevoise's legal status is controlled by New York's Chapter 278, namely Section 10, "Partnership defined."

1. A partnership is an association of two or more persons to carry on **as co-owners** a business for profit and includes for all purposes of the laws of this state, a registered limited liability partnership.

2. **But** any association formed under any **other statute of this state, or any statute adopted by authority, other than the authority of this state, is not a partnership under this chapter**, unless such association would have been a partnership in this state prior to the adoption of this chapter; but this chapter shall apply to limited partnerships except in so far as the statutes relating to such partnerships are inconsistent herewith." (Bolding added).

With reference to other statutes, and the forms of the State New York, the term "co-owners" must be reduced to the **exact percentage of the ownership**, as so required for taxation laws in the State.

Further, the word "**But**" in the statute indicated the intent of the legislators to exclude that category of alleged partnership, not complying with the law of New York. That is most critical interpretation of the statute's meaning for this appeal.

The next section is also determinative for denying four attorneys (solicitors) in the London office status of a true partner, concluding they have no ownership stake in percentage and are **nominal** partners.

Section 11 – 'Rules for determining the existence of a partnership,'

"In determining whether a partnership exists, these rules shall apply:

1. Except as provided by section twenty-seven persons who are **not partners as to each other are not partners as to third persons**.

2. Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

3. The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

4. The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(a) As a debt by installments or otherwise,

(b) As wages of an employee or rent to a landlord,

(c) As an annuity to a surviving spouse or representative of a deceased partner,

(d) As interest on a loan, though the amount of payment vary with the profits of the business,

(e) As the consideration for the sale of the good-will of a business or other property by installments or otherwise." (Bolding added).

Source: N.Y. Partnership Law § 11. See also the next section, N.Y. Partnership Law § 12.[6]

## 2. CASE LAW INTERPRETING NEW YORK STATE STATUTES ON PARTNERSHIP.

Even though the statutory text is determinative, the case law likewise shows the tests, that the four attorneys (solicitors) in the London office are not true partners. Instead, those can be considered only as **nominal partners without the stake of ownership**. None of them were produced, to rebut the presumption of no ownership state, a partnership agreement. No document filed by Debevoise showed listing him or her, with his or her percentage interest. On the contrary, Debevoise's Partnership Agreement, to the extent of being unredacted, shows the four names and empty lines after those, instead of the percentage of ownership stake.

As stated above, CCI relies on the State statutes and the State cases of the State of New York. The District Court's rulings from the bench, not requiring Debevoise to disclose the existence of a percentage stake of the purported out-of-State partners, is in stark conflict with the State case law. In a persuasive case,

---

[6] "Section 12 - Partnership property. 1. All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property. 2. Unless the contrary intention appears, property acquired with partnership funds is partnership property. 3. Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name. 4. A conveyance to a partnership in the partnership name, though without words of inheritance, passes the entire estate of the grantor unless a contrary intent appears." N.Y. Partnership Law § 12"

*Wallace v. Perret*, Supreme Ct, Kings Cty, New York. June 23, 2010, 28 Misc.3d 1023 903 N.Y.S.2d 888 2010 N.Y. Slip Op. 20249, the State Court explained that the percentage of ownership is critical for voting by partners for partnership's decisions. In that case, the State Court considered percentages up to **10,000th part of one percent in an ownership stake**. The Court in *Wallace* did not even round up the numbers, but went that far, recognizing that this is one of the most important criterium to consider.

In this case below, however, the Court ruled essentially that the ownership percentage does not matter. CCI submits that the Court below, respectfully erred on that. As mentioned above, the Court dismissed a case based on the declaration on the law: "THE COURT: I don't know of any authority that says that an individual has to identify what percentage of interest they have in a partnership in order to qualify as a partner." JA1359. However, as CCI also pointed in at the conference, that was right in New York's tax forms, referring to the record. JA1359-60.

The State Courts have said that a "partnership" is an association of two or more persons to carry on as **co-owners** a business for profit. *Brandenburger & Marx v. Heimberg*, 1942, 34 N.Y.S.2d 935. See also, *Keen v. Jason*, 1959, 19 Misc.2d 538, 187 N.Y.S.2d 825, affirmed 11 A.D.2d 1039, 207 N.Y.S.2d 1001.

Again, none of the four Affidavits from attorneys in London says what equity interest a purported 'partner' in the LLP.

The lines, listing the allegedly 4 **nominal** partners in London, contain empty spaces where there would be a percentage of their ownership stake,

The percentage of stake is treated as a critical for validity of a partnership. One court said that allocating to one of partners a 10% interest in partnership, was unequivocal, even though the partnership never filed certificate of limited liability partnership with Secretary of State or published required notice. See *Joachim v. Flanzig*, 2004, 3 Misc.3d 371, 773 N.Y.S.2d 267.

Under New York law, a limited liability partnership is generally not different from a partnership, albeit one in which the partners in most circumstances have limited liability. *Mudge Rose Guthrie Alexander & Ferdon v. Pickett*, 1998, 11 F.Supp.2d 449. A limited liability partnership is a partnership even though the partners have limited liability. *Institute of Physical Medicine & Rehabilitation, LLP. v. Country Wide Ins.*, 2002, 193 Misc.2d 803, 752 N.Y.S.2d 232.

Whether a partnership relationship exists is determined by the parties' written partnership agreement, or, if the parties do not have a written agreement, the intent of the parties as evidenced by objective factors such as sharing in profits and losses, exercising joint control over the business and its property and **possessing an ownership interest in the partnership**. *Joachim v. Flanzig*, 2004, 3 Misc.3d 371, 773 N.Y.S.2d 267.

As the record from the Company House, England, shows that out of 8 managing officers of Debevoise in London, all but one entered their addresses as though domiciled in the U.S., and only one solicitor is domiciled in England. Those records, showing 0 interest, are in conflict with the Affidavits those four attorneys in London filed in the action below.

A solicitor under English law is extremely unlikely to have an ownership interest in the New York partnership, which is confirmed that none of attorneys in London has beneficial interest in the "mother partnership", the LLP in New York.

Debevoise did not file in exhibits sufficient documents required by the statute concerning its organization, as so typically required. See *Joachim v. Flanzig*, 2004, 3 Misc.3d 371, 773 N.Y.S.2d 267.

The failure by any of Debevoise's attorneys, claiming to be partners, to attach to any of the Affidavits his or her contract or agreement with the law firm—be it under seal-- was to obscure the presumed fact or inference, that none of them has percentage interest in the ownership, required, pursuant to the forms cited above, to be shown, exactly, in a percentage.

A "partnership" is defined as a contract of two or more persons to place their money, effects, labor or skill or some or all of them in lawful commerce or business and to divide the profits and bear the loss in certain proportions. *Boyarsky v. Froccaro*, 1984, 125 Misc.2d 352, 479 N.Y.S.2d 606. See, also, *Pattison v.*

*Blanchard*, 1851, 5 N.Y. 186; *Manning v. Whalen*, 1940, 259 A.D. 490, 20 N.Y.S.2d 364; *Hanlon v. Melfi*, 1979, 102 Misc.2d 170, 423 N.Y.S.2d 132.

As CCI argued, the Rules of Professional Conduct for New York are in agreement with the above statutes, to determine the definition of a partner. Namely, Rule 1.0 states: "(m) "Partner" denotes a member of a partnership, a **shareholder in a law firm** organized as a professional legal corporation or a member of an association authorized to practice law."

Notably, the same Rules prohibit licensed attorneys to hold themselves as partners if they are legally not partners. See Rule 7.5. 'Professional Notices, Letterheads and Names.'[7] Comment [5] states: "… it is misleading for lawyers to hold themselves out as having a partnership with one or more other lawyers unless they are in fact partners. It is also mis leading for lawyers to hold themselves out as being counsel, associates, or other affiliates of a law firm if that is not a fact, or to hold themselves out as partners, counsel, or associates if they only share offices."

Debevoise's representations also triggered another concern regarding a different jurisdiction where the London office is located, arising under subsection (d), towit: "(d) A partnership shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the members

---

[7] "(c) Lawyers shall not hold themselves out as having a partnership with one or more other lawyers <u>unless they are in fact partners</u>."

and associates of the firm on its letterhead and in other permissible listings make clear the jurisdictional limitations on those members and associates of the firm not licensed to practice in all listed jurisdictions…" (with some exceptions not applicable here).

As the letterhead on which Ceresney solicited the client's signature shows, that there are no listed members or associates of the firm on the letterhead. The lack of that enumeration on the letterhead highlights the existence of the complete diversity of citizenship.

This Court should conclude that none of five Affidavits submitted by Debevoise showed the percentage in the ownership of the LLP or even any stake in ownership, but showed mostly irrelevant facts, diverting from the ownership issue,

towit, Katherine Ashton Young,[8] Alan Kartashkin who has no permanent status in the U.K.,[9] James C. Scoville[10], and Geoffrey P. Burgess.[11]  JA1074-1089.

The Affidavit of Marc Grainger, that was presumably supposed to provide information on the ownership stakes of all these purported stateless partners, is silent on that.  JA1087-88.

However, the Grainger Affidavit makes an important admission "5. Approximately 45 attorneys currently work in Debevoise's D.C. office. Debevoise is registered in D.C. as a foreign limited liability partnership." Ibid. JA1103. That clearly makes Debevoise, with roughly $50 million yearly earnings in Washington, D.C., as doing business, in this District, which is addressed below. Ibid.

---

[8] "4. I have a driver's license in the United Kingdom and one in the United States. 5. I maintain bank accounts in the United Kingdom as well as in the United States. 6. I pay taxes in the United Kingdom as well as in the United States."  JA1088.

[9] "I have been granted leave to enter the United Kingdom….until July 17, 2027. I was born in the United States...6. I maintain bank accounts…in the United States. 7. I…pay taxes in…the United States. I am a non-domiciled taxpayer resident in United Kingdom and non-resident taxpayer under United States law."  JA1079.

[10] "5. I maintain bank accounts in the United Kingdom as well as in the United States. 6. I pay taxes in the United Kingdom as well as in the United States." JA1086.

[11] "4. I have a driver's license in the United Kingdom and one in the United States. 5. I maintain bank accounts in the United Kingdom as well as in the United States. 6. I pay taxes in the United Kingdom as well as in the United States." JA1090.

### 3. ALLEGED MALPRACTICE IN DEBEVOISE'S HANDLNG THE GRAND JURY SUBPOENA FROM DISTRICT OF COLUMBIA, AS PINNACLE OF ALLEGED ACTIONABLE MISCONDUCT.

The facts concerning the misconduct of Debevoise concerning the Grand Jury in Washington D.C., precisely in this very Courthouse, convened on the 3rd Floor, is at the heart of this case asserting the claims based on malpractice.

Some of the records highly relevant here are identified by their description. Debevoise took the position that those are under seal. Accordingly, CCI had no choice but to move this Court to unseal those and publish those in Exhibits in support of the Memorandum in opposition.

On January 3, 2019 (shortly after Debevoise terminated their representation of CCI and Kontilai, on information and belief, in October of 2018), this Court issued on Ceresney a Grand Jury Subpoena.

The record showed the Subpoena of this Court, on that dated January 3, 2019. The Grand Jury Subpoena said in its relevant part:

"SUBPOENA TO TESTIFY BEFORE A GRAND JURY

Andrew J. Ceresney, Esq., Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022, (212) 909-6000

YOU ARE COMMANDED to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When

you arrive, you must remain at the court until the judge or a court officer allows you to leave.

Place: U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

U.S. Courthouse, 3rd Floor Grand Jury # 18-3 (Case 33)

333 Constitution Avenue, N.W. Washington, D.C. 20001

Date and Time: Friday, May 10, 2019, at 9:00 AM." JA1477.

The Subpoena was accompanied by a list of the documents to be produced. Ibid.

Debevoise had a lawful obligation, under the case law, to prepare and file a Motion to Quash the Subpoena, based on the attorney-client privilege and several theories based on the D.C. Bar Rules of Professional Conduct.[12]

The cornerstone of the alleged violation is that Debevoise, Ceresney, and two former associates acted in clear disregard of Rule 1.6, in detriment of their obligations and duty of care to their former clients, resulting in disastrous consequences, destroying a multi-million business and the personal life of the CEO. To quote from Rule 1.6, in force for the District of Columbia:

Rule 1.6: Confidentiality of Information. (a) Except when permitted under paragraph (c), (d), or (e), a lawyer shall not knowingly: (1) reveal a confidence or secret of the lawyer's client; (2) use a

---

[12] As this is well established, the DC Bar Rules of Professional Conduct are largely based on the ABA's Model Rules of Professional Conduct, the differences are minimal.

confidence or secret of the lawyer's client to the disadvantage of the client; (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person.

Even if, arguendo, Debevoise perceived that a crime-fraud exception applied (which may be applicable to Gail Holt, but not CCI), still Debevoise had no obligation to produce any privileged documents, as Rule 1.6 recognizes the attorney's right not to produce documents or information, instead using the verb "may".[13] Compare with the applications of Kontilai's subsequent attorneys that Holt be charged for the offenses mistakenly attributed to Kontilai. JA1002-27.

With regard to the implied obligation of attorneys to preserve attorney-client privilege whenever and wherever possible, even with regard to a Court Order or ever more so, the Subpoena to testify and produce documents, the District of Columbia law cautions attorneys, in express and clear terms: *998 4 Although the obligation to obey a court order is clear, our rules also admonish a lawyer to make "every

---

[13] More precisely, the applicable extract from Rule 1.6 says: "(d) When a client has used or is using a lawyer's services to further a crime or fraud, the lawyer may reveal client confidences and secrets, to the extent reasonably necessary: (1) to prevent the client from committing the crime or fraud if it is reasonably certain to result in substantial injury to the financial interests or property of another; or (2) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of the crime or fraud." All these obligations remained in force after Debevoise terminated their representation of CCI and Kontilai, to wit, to quote from the same Rule: "(g) The lawyer's obligation to preserve the client's confidences and secrets continues after termination of the lawyer's employment."

reasonable effort" to preserve the option to appeal. Cmt. (26) to Rule 1.6 explains: "The lawyer may comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client. **But a lawyer ordered by a court to disclose client confidences or secrets should not comply with the order until the lawyer has personally made every reasonable effort to appeal the order** or has notified the client of the order and given the client the opportunity to challenge it."  See *Adams v. Franklin*, DC Ct App., 2007, 924 A.2d 993.

The *Adams* Court also noted: "Although a court order to compel testimony vitiates Rule 1.6, there still exists the independent basis found in the attorney-client privilege to preclude compelled disclosure of privileged communications. "The attorney-client privilege is one of the oldest recognized privileges for confidential communications, and privileged communications are traditionally deemed worthy of maximum legal protection." *In re Public Defender Serv*., 831 A.2d 890, 900 (D.C.2003) (citations and quotation marks omitted); see also *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Wender v. United Servs. Auto. Ass'n,* 434 A.2d 1372, 1373 (D.C.1981)."

The record, available to date, shows that Debevoise failed to abide by the case law and Rule 1.6, declining to seek to quash the January 3, 2019, Subpoena in the District Court, and, if needed, to elevate the legal contest to the U.S. Court of Appeals for the District of Columbia Circuit.

According to available information, Debevoise did nothing of that. See *In re Paul, DC Ct of Appl*, 2023, 292 A.3d 77 (unwarranted disclosure of the client's confidences resulting in a 3-month suspension from practice).[14]  See also *In re Koeck*, DC Ct App, 2018, 178 A.3d 463 2018 WL 770373 (2-month suspension for disclosure).  See *In re Coleman*, DC Ct of App., 2017 162 A.3d 159,  in addition to knowingly revealing information that would likely be detrimental to his clients, he failed to (1) provide competent representation and serve his clients with skill and

---

[14] As one court said: "The attorney-client privilege is the oldest of the established privileges for confidential communications. 8 Wigmore, Evidence §2290 (McNaughton rev. 1961)... Its main purpose is to encourage full and frank communication between attorneys and their clients…Thus the privilege applies only in the following circumstances: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. 8 Wigmore § 2292.3. 56… the party asserting the privilege must clearly show that the communication was made "in a professional legal capacity." *SEC v. Gulf & Western Industries, Inc.*, 518 F.Supp. 675, 683 (D.D.C.1981). "In general, American decisions agree that the privilege applies if one of the significant purposes of a client in communicating with a lawyer is that of obtaining legal assistance." Reporter's Note, Restatement (Third) of the Law Governing Lawyers, § 72 (2000).  See *Jones v. U.S.* DC Ct of App, 828 A.2d 169.

care; (2) zealously represent his clients; (3) act with reasonable promptness; and (4) communicate with his clients, thereby violating Rules 1.1 (a) & (b), 1.3 (a) & (c), 1.4 (a) & (b), and 1.6 (a) of the District of Columbia Rules of Professional Conduct." Another court noted that an attorney, facing law enforcement, "had a duty to appellant and breached the applicable standard of care when Hoeffel allegedly gave confidential client information to prosecutors..." See *In re Gonzalez*, 773 A.2d 1026, 1031–32 (D.C.2001); *Waldman v. Levine*, 544 A.2d 683, 690–91 (D.C.1988). *Herbin v. Hoeffel*, DC Ct of App., 2002, 806 A.2d 186.

## 4. LONG ARM JURISDICTION IN FORUM OF ISSUED SUBPOENA FOR THREE INDIVIDUAL DEFENDANTS APPLIES IN THIS CASE.

In connection with the tortious activities in Washington, D.C., concerning CCI and Kontilai with regard to the grand jury, including the production of the "attorney-client" privileged documents, all three individuals, Ceresney, Brockner, and Mhatre, fall under the long-arm jurisdiction of this Court.[15] CCI relies on the subsection (3) "causing tortious injury in the District of Columbia by an act or

---

[15] The District of Columbia long-arm statute provides, among other things, for "personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's": "(1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or] (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia...."

omission in the District of Columbia."  Debevoise's causing injury in the District of Columbia is clear, such as mishandling the defense of the clients CCI and Kontilai.

Under the District of Columbia long-arm statute, a court has specific jurisdiction over a non-resident defendant if a plaintiff makes a prima facie showing that: the plaintiff suffered a tortious injury in the District of Columbia; the injury was caused by Debevoise's act or omission outside the District of Columbia; and Debevoise had one of the three enumerated contacts or "plus factors" in the long-arm statute, namely, regularly doing or soliciting business, engaging in any other persistent course of conduct, or deriving substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. D.C. Official Code, 2001 Ed. § 13–423(a).  *Parisi v. Sinclair*, DCD, 2012, 806 F.Supp.2d 93.  See also *Delta Sigma Theta Sorority, Inc. v. Bivins*, 215 F.Supp.3d 12, 15.

**5. ACTION IN DISTRICT COURT WAS PERMEATED BY THE APPLICATION AND INTERPRETATION OF FEDERAL STATUTES AND REGULATIONS.**

Debevoise specifically engaged in representation concerned the investigation of the U.S. Securities and Exchange Commission.  See Exhibit to VC.  As an integral part of such representation, the Debevoise parties were obligated to consider and interpret the numerous Federal Statutes, particularly concerning Title 15 of the U.S. Code pertaining to the securities and Title 18 of the U.S. Code pertaining to

obstruction of justice. Given the totality of the circumstances, the following statutes were relevant for the investigation of the SEC, as follows.

Statutes That Should Be Treated as Relevant for Adjudging Claims for Debevoise's

Legal Representation of CCI and Its CEO in the SEC's Investigation

15 U.S. Code, Subchapter I, Domestic Securities

§ 77b. Definitions; promotion of efficiency, competition, and capital formation;
§ 77c. Classes of securities under this subchapter;
§ 77d. Exempted transactions;
§ 77d–1. Requirements with respect to certain small transactions;
§ 77e. Prohibitions relating to interstate commerce and the mails;
§ 77f. Registration of securities;
§ 77g. Information required in registration statement;
§ 77h. Taking effect of registration statements and amendments thereto;
§ 77h–1. Cease-and-desist proceedings;
§ 77i. Court review of orders;
§ 77j. Information required in prospectus;
§ 77k. Civil liabilities on account of false registration statement;
§ 77l. Civil liabilities arising in connection with prospectuses and communications;
§ 77m. Limitation of actions;
§ 77n. Contrary stipulations void;
§ 77o. Liability of controlling persons;
§ 77p. Additional remedies; limitation on remedies;
§ 77q. Fraudulent interstate transactions;
§ 77r. Exemption from State regulation of securities offerings;
§ 77r–1. Preemption of State law;
§ 77s. Special powers of Commission;
§ 77t. Injunctions and prosecution of offenses;
§ 77u. Hearings by Commission;
§ 77v. Jurisdiction of offenses and suits;
§ 77w. Unlawful representations;
§ 77x. Penalties;
§ 77y. Jurisdiction of other Government agencies over securities;
§ 77z. Separability;

§ 77z–1. Private securities litigation;
§ 77z–2. Application of safe harbor for forward-looking statements;
§ 77z–2a. Conflicts of interest relating to certain securitizations;
§ 77z–3. General exemptive authority;
§ 77aa. Schedule of information required in registration statement.

<u>Federal Statutes that Should Be Deemed Relevant for Adjudication of Claims of</u>

<u>Obstruction of Justice in the Course of Legal Representation</u>

<u>18 U.S. Code Chapter 73 – Obstruction of Justice</u>

§ 1505. Obstruction of proceedings before departments, agencies, and committees;
§ 1506. Theft or alteration of record or process; false bail;
§ 1510. Obstruction of criminal investigations;
§ 1512. Tampering with a witness, victim, or an informant;
§ 1519. Destruction, alteration, or falsification of records in Federal investigations and bankruptcy.

## 6. CCI ASKS THE COURT TO CONSIDER PERSUASIVE RATIONALE AND ANALYSIS IN CASE *SIANTOU V. DK ASSOCIATES*

CCI is aware that cases in the District Court outside of this Circuit, of nonbinding nature, may be typically cited only to the extent of being persuasive. CCI proposes a case in a sister District, that provides a very thorough analysis, perfectly matching CCI's argument. Namely, CCI relies on the analysis in a case *Siantou v. DK Associates* (D. Maryland, S. Div., February 16, 2023) Slip Copy 2023 WL 2071266. The case is right on the issue here, and CCI takes the liberty to repeat that the District of Maryland's conclusions and citations on the case law, as follows.

"In determining whether a claim "arises under" the laws of the United States, courts "abide by the 'well-pleaded complaint rule,' assessing whether the plaintiff's cause of action — as stated on the face

of the complaint — has some basis in federal law." *Old Dominion Elec. Coop. v. PJM Interconnection, LLC,* 24 F.4th 271, 279 (4th Cir. 2022), cert. denied, 143 S. Ct. 87 (2022) (citing *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 807–08 (1986)). Claims that are "rooted in state law, then, may nevertheless 'arise under' federal law and fall within the scope of federal question jurisdiction ... where the vindication of a right under state law necessarily turn[s] on some construction of federal law." Id. at 280. In *Gunn v. Minton,* 568 U.S. 251 (2013) and *Grable & Sons,* 545 U.S. 308 (2005), the Supreme Court enumerated what has come to be known as the "Gunn-Grable" framework which provides a 4-part test explaining that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Old Dominion,* 24 F.4th at 280. This test is consistent with the test articulated by the Fourth Circuit in *Bryan v. BellSouth.* See id. ("We agree with the district court, however that Bryan's explicit standard 'closely tracks the *Gunn-Grable* framework' and that the latter did no harm to the former."). In *Bryan,* the 4th Circuit stated that federal courts have jurisdiction to hear a Plaintiff's cause of action derived out of state law when "a well-pleaded complaint establishes ... that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bryan v. BellSouth Commc'ns, Inc.,* 377 F.3d 424, 429 (4th Cir. 2004). Because the Court finds that Plaintiff's claims depend on a resolution of a substantial question of federal law, the Court retains jurisdiction over Plaintiff's claims"…

"…although Plaintiff's claims are alleged pursuant to state law, they nonetheless turn on construction of federal law. Under the Gunn-Grable framework a federal issue is (1) necessarily raised and (2) actually disputed.

The federal issue is likewise also (3) substantial and (4) capable of resolution in federal court without disrupting the federal-state balance. "The substantiality inquiry looks to the importance of the issue to the federal system as a whole." *Gunn v. Minton,* 568 U.S. at 260. The outcome as to whether Debevoise breached their duties owed to Plaintiff will require a Court to determine if the purported clause in the retainer agreement is in violation of a federal statute. It will likewise require a Court to determine the applicability of the 7th Amendment to

Plaintiff's claims. Both questions will require construction of primarily federal issues. Thus, the question presented here has general applicability and importance. See *Gunn v. Minton*, 568 U.S. at 261 (purchase of certain bonds issued by federal government was substantial federal question because the determination of the constitutional validity of an act of Congress was drawn into question and is of general importance). Finally, Plaintiff's claims may be properly resolved in federal court for similar reasons: litigation of federal laws and constitutional issues are most appropriately pursued in the federal setting. See *Old Dominion*, 24 F.4th at 288 (determination of compliance with federal regulatory rules is most appropriately pursued in the federal administrative setting). See also *Grable & Sons*, 545 U.S. at 315 (tax provision is an important issue of federal law that sensibly belongs in a federal court)."

Should this Court endorse the analysis and asserting jurisdiction in the *Siantou* case *supra*, then the action should be remanded on the premise that it is intrinsically interwoven with the issues of federal law and the U.S. District Court is a proper forum for hearing this case.

As to the "arising from" test, another federal case is notable, *Police Association of New Orleans v. City of New Orleans* (E.D. Louisiana, 2021) 572 F.Supp.3d 265 ([1] resolution of a federal issue was necessary to resolve plaintiffs' claims; [2] federal issue was actually disputed; [3] federal issue was substantial; and [4] exercise of federal jurisdiction would not disturb balance of federal and state judicial responsibilities.)

In CCI's view, the District Court, underestimated the allegations and documents pertinent to jurisdiction did not consider the case of the Supreme Court, *Grable & Sons*: "No "single, precise, all-embracing" test exists for jurisdiction over

federal issues embedded in state law claims between nondiverse parties. *Grable & Sons*, 125 S. Ct. at 2368 (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 821 (1988) (Stevens, J., concurring)). However, the general standard is an investigation into whether the state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*, 125 S. Ct. at 2368.

## 7. DEBEVOISE'S SERVICES WERE SUBJECT TO PART 203 (RULES RELATING TO INVESTIGATIONS), GOVERNED BY CODE OF FEDERAL REGULATIONS AND SEC'S RULES

In addition to regulations by the Bar, the Defendants were also governed by the Regulations of the U.S. Securities and Exchange Commission, a Federal Agency, whose regulations are incorporated in the Code of Federal Regulations.

Debevoise specifically offered its services to CCI and its officers, and was retained, nearly exclusively for representing CCI and its officers in the investigation by the U.S. Securities and Exchange Commission.  See Exh. 1 to VC.  The source of authority for Part 203 were statutes 15 U.S.C. 77s, 77sss, 78w, 80a–37, and 80b–11, as well as 29 FR 3620.

Part 203 represents a very detailed and formalized set of rules and regulations under federal law, controlling all aspects of the SEC's investigations.[16]

In particular, Debevoise was responsible for defending Kontilai at the questioning in the SEC's office in Denver and subsequently in Washington D.C. upon a subpoena. Representing a former client and a witness, in turn, was subject to those federal regulations.[17]

### 8. CONDUCT OF DEBEVOISE WAS SUBJECT REGULATION UNDER CFR PART 205, STANDARDS OF PROFESSIONAL CONDUCT FOR ATTORNEYS PRACTICING BEFORE THE SEC

The alleged malpractice of Debevoise and its attorneys should not be measured under merely the Rules of Professional Conduct of the D.C. Bar. The U.S. Securities and Exchange Commission has its own set of rules and regulations representing before it securities' issuers, such as CCI, memorialized as Part 205, and included in the Code of Federal Regulations. Those rules for attorneys practicing

---

[16] PART 203—Rules Relating to Investigations. Subpart A—In General. § 203.1 Application of the rules of this part. (Omitted). § 203.2 Information obtained in investigations and examinations. (Omitted). § 203.3 Suspension and disbarment. (Omitted). Subpart B—Formal Investigative Proceedings. § 203.4 Applicability of §§ 203.4 through 203.8. (Omitted). § 203.5 Non-public formal investigative proceedings. (Omitted). § 203.6 Transcripts. (Omitted).

[17] § 203.7 'Rights of witnesses'.

before the SEC are based on a series of statutes, such as 5 U.S.C. 77s, 78d–3, 78w, 80a–37, 80a–38, 80b–11, 7202, 7245, and 7262, including 68 FR 6320.

These Rules for practicing before the SEC are more stringent as compared to the regular norms and standards of practice under the DC Bar Rules of Professional Conduct.[18] The disclaimer is made that the SEC's Rules under Part 205 do not create, in themselves, a cause of action.

However, those Rules do establish the standards for duty of care in proceedings before the SEC, which are more generally governed by the DC Bar's Rules of Professional Conduct.

It is axiomatic that the U.S. District Court is better suited to consider and adjudicate issues stemming from the alleged negligence of Debevoise and its attorneys in representing CCI before that federal Commission, pursuant to the Code of Federal Regulation's provisions, cited above.

## CONCLUSION.

This honorable Court should remand the matter to the U.S. District Court with three alternative rulings: the District Court is obligated to allow jurisdictional

---

[18] Code of Federal Regulations. Part 205, 'Standards of Professional Conduct for Attorneys Appearing and Practicing Before the Commission in the Representation of an Issuer.' Relevant sections include: §205.1 Purpose and scope. §205.2 Definitions. §205.3 Issuer as client. §205.4 Responsibilities of supervisory attorneys. §205.5 Responsibilities of a subordinate attorney. §205.6 Sanctions and discipline.

discovery in this case or the showing in this case that the claims substantially "arise under" the federal law, is already sufficient to conclude that the U.S. District Court for the District of Columbia has jurisdiction and should hear this case.

Respectfully submitted.

Dated this 11th day of June 2024.

*/signed George Lambert/*

George Lambert, Esq.,
CADC bar #60958, DC bar #979327
The Lambert Law Firm Professional Corp.
1025 Connecticut Ave, # 1000 NW
Washington, D.C., 20036
Tel. (202) 640 1897, Fax (800) 852 1950
Attorney for Appellants-Plaintiffs-Cross Appellees
Collector's Coffee Inc. and Mykalai Kontilai

# CERTIFICATE OF SERVICE

The undersigned certifies that the present disclosure statement was served on

this 8th day of June 11, 2024, by ECF filing system, and by email, as follows:

Dane Hal Butswinkas: dbutswinkas@wc.com
Mrs. Krystal Commons Durham: kdurham@wc.com
Mr. David S. Blatt: dblatt@wc.com
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
D 202.434.5000
F 202.434.5029

/s/ *George Lambert*
_____
GEORGE LAMBERT, Esq.,
CADC bar #60958, DC bar #979327
LAW OFFICES OF GEORGE LAMBERT
1025 Connecticut Ave, # 1000 NW
Washington, D.C., 20036
Tel. (202) 640 1897, Fax (800) 852 1950

# CERTIFICATE OF COMPLIANCE

I hereby certify as follows:

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,274 words as counted using Microsoft Office Word 365.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-Point Times New Roman.

Dated: June 11, 2024

By: /s/ *George Lambert*